UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re ) | | |
| ) | | |
| LOUIS J. PEARLMAN *et. al*., ) | Case No. 6:07-bk-00761-KSJ | |
| ) | Chapter 11 | |
| Debtors. ) | | |
| ) | | |
| ──────────────── | | |
| SONEET R. KAPILA, ) | | |
| ) | | |
| Plaintiff, ) | | |
| vs. ) | | |
| ) | Adversary No. 6:09-ap-00054-KSJ | |
| BANK OF AMERICA, N.A., ) | | |
| ) | | |
| Defendant. ) | | |
| ) | | |

## **MEMORANDUM OPINION DENYING TRUSTEE'S DEMAND FOR JURY TRIAL**

The Chapter 11 Trustee, Soneet R. Kapila, has requested a jury trial in this adversary proceeding seeking the recovery of numerous alleged fraudulent transfers made by the Debtors to the Defendant and other similarly situated banks in furtherance of a massive Ponzi scheme. The Court concludes that the Trustee is not entitled to a jury trial and denies his request.

On March 1, 2007, four creditors[1] filed an involuntary bankruptcy petition against Louis J. Pearlman under § 303 of the Bankruptcy Code.[2] This petition prompted other involuntary bankruptcies.

Debtor Louis J. Pearlman and his co-debtor companies—Trans Continental Airlines ("TCA"), Trans Continental Records ("TCR"), and Louis J. Pearlman Enterprises ("Enterprises")—allegedly carried out three different fraudulent schemes. Two of the schemes

---

[1] The petitioning creditors in this case were Tatonka Capital Corporation, Integra Bank, American Bank of St. Paul, and First National Bank & Trust Company of Williston. Doc. No. 1 at 2.
[2] All references to the Bankruptcy Code shall be to 11 U.S.C. § 101 *et seq.*

offered 'investments" fitting the classic Ponzi scheme model. The third scheme was a so-called "Bank Fraud Scheme," in which Pearlman and TCA fraudulently obtained large loans by falsifying due diligence materials to "con" the banks, including the Defendant, into lending the Debtors millions of dollars.[3] The loans allegedly were used to pay the Debtors' investors and to keep the two other Ponzi schemes going.  For example, the Defendant in this adversary proceeding, Bank of America, loaned the Debtors over $20 million in various revolving loans.[4] The Debtors repaid nearly $10 million to the Defendant with capital provided by new investors before the house of cards came tumbling down and the Debtors were forced into bankruptcy.

The Court appointed Mr. Kapila as a Chapter 11 Trustee to marshal the Debtors' assets and to liquidate the jointly administered and later substantively consolidated estates.[5] The Trustee filed over 700 adversary proceedings against the Defendant and others to avoid and recover fraudulent transfers made pursuant to §§ 544, 548, and 550 of the Bankruptcy Code and Chapter 726 of the Florida Statutes.  The Trustee filed this four-count adversary proceeding on February 27, 2009, against the Defendant to recover, as fraudulent transfers, the loan payments Bank of America received from the Debtors during the four years prior to bankruptcy.[6] Counts I and II assert *actual* fraud under bankruptcy and Florida law because they were made to perpetuate the Ponzi scheme and with the actual intent to hinder, delay or defraud present and future creditors of the Debtors.[7] Counts III and IV assert *constructive* fraud arguing that, to the

---

[3] The Court has determined the Bank Fraud Scheme does not fit the classic definition of a Ponzi scheme. Doc. No. 157 at 5 in Adversary Proceeding No. 9-ap-53.
[4] Proof of Claim No. 750-1 Exhibit A.
[5] *See* Doc. No. 3489 in Main Case No. 07-bk-00761. The Debtors include: Louis J. Pearlman; Enterprise; Louis J. Pearlman Enterprises, LLC; TC Leasing, LLC; TCA; Trans Continental Aviation, Inc.; Trans Continental Management, Inc.; Trans Continental Publishing, Inc.;TCR; Trans Continental Studios, Inc.; and Trans Continental Television Productions, Inc. (collectively, the "Debtors"). In addition, a related corporation, F. F. Station, LLC, filed a separate voluntary Chapter 11 case on February 20, 2007, Case No. 6:07-bk-575-KSJ; however, this case is not jointly administered with the cases of the other Debtors.
[6] Doc. No. 1. Counts I - II seek to recover fraudulent transfers from the Debtors to the Defendants as transfer made with actual fraudulent intent under 11 U.S.C. §§ 544(b), 548(a), 550, and Fla. Stat. Chap. 726.  Counts III and IV, which have since been dismissed, sought to avoid certain transfers as constructively fraudulent pursuant to applicable bankruptcy and state court statutes.
[7] Doc. No. 1 at 10-11.

extent the Debtors were operating a Ponzi scheme, they were insolvent and allegedly received less than reasonably equivalent value in exchange for the loan payments made to the Defendant.[8]

Bank of America filed a motion to dismiss the Trustee's complaint on May 11, 2009,[9] but, before the Court ruled on the motion, the Trustee requested that the Court implement procedures to resolve all pending adversary proceedings filed against similarly situated bank defendants.[10]  At a hearing on July 16, 2009, the Court directed the Trustee, the Official Committee of Unsecured Creditors, and counsel for each bank to propose "test case" procedures that would govern the resolution of all of the adversary proceedings.  On August 3, 2009, all cases relating to the Bank Fraud Scheme were stayed until further order of the Court.[11]

On April 16, 2010, this Court entered a Bank Test Case Order adopting specific procedures designed to facilitate the orderly, prompt, and efficient resolution of the bank fraud cases.[12]  The Bank Test Case Order classified the claims into two scenarios.  Test Case No. 1 assessed the Trustee's claims for *actual* fraudulent transfers against the banks, while Test Case No. 2 tested the viability of the Trustee's claims for *constructively* fraudulent transfers.[13]

On December 2, 2010, the Court denied the lead bank's motion to dismiss the actual fraudulent transfer claims in Test Case No. 1,[14] and further stayed all dates and deadlines until "eleven days after the date of the entry of an order of the District Court on an appeal of the ruling on the Test Case No. 1."[15]

---

[8] *Id*. at 12-13.
[9] Doc. No. 5.
[10] Doc. No. 2497 in Main Case No. 07-bk-00761.
[11] Doc. Nos. 2611 and 2643 in Main Case No. 07-bk-00761.
[12] Doc. No. 2953 in Main Case No. 07-bk-00761.
[13] On April 26, 2011, the Court partially granted and partially denied the Bank Joint Defense Group's motion to dismiss the Trustee's constructively fraudulent transfer claims in Test Case No. 2.  In that order, the Court found that "the Debtors operated substantially as one financial entity and the Debtors' estates would benefit greatly from avoiding the costs associated with the quixotic task of trying to sort out the assets and liabilities of their respective estates. Upon substantive consolidation, all of the Debtors' assets and liabilities are combined for all purposes."[13] This ruling eliminated the Trustee's constructive fraud claims against all of the banks, including the Trustee's Counts III and IV against Bank of America.
[14] Doc. Nos. 29 & 30 in Case No. 09-ap-715.
[15] Doc. No. 2935 at 14 in Main Case No. 07-bk-00761.

The District Court affirmed this Court's ruling on the actual fraudulent transfers in Test Case No. 1 on September 7, 2012.[16] Accordingly, the stay of this adversary proceeding terminated on September 18, 2012. Eleven days later, on October 5, 2012, the Trustee filed a demand for jury trial, more than three years after the adversary proceeding was filed, but two months *prior* to the deadline of December 21, 2012, established in the case management order.[17]

Bank of America, like many of the other bank defendants,[18] raises various arguments opposing a jury trial by the Trustee.[19] It argues the Trustee's jury demand was untimely. It argues that the underlying loan documents specifically waive any right to a jury trial and that the Trustee is bound by this waiver. It argues that the equitable claims resolution process arising upon the filing of a proof of claim trumps any right the Trustee otherwise may have to try his fraudulent transfer claims before a jury. It lastly argues that, even is no proof of claim is filed, the inherent nature of the Trustee's role as administrator of this equitable estate and his reliance on his avoiding powers prevents him from seeking a jury trial. The Trustee disputes each of these arguments. I will address each of these arguments in turn.

### **The Trustee's Jury Demand Was Timely**

A request for jury trial under Federal Rule of Civil Procedure 38 is not absolute. Parties waive their right to a jury when they fail to make a timely request.[20] A party seeking a jury trial must serve a written demand on interested parties no later than fourteen days after the last responsive pleading is filed.[21] Because the right to a trial by jury is a fundamental constitutional right, "courts must indulge every reasonable presumption against waiver."[22]

---

[16] Doc. No. 70 in Adversary Proceeding No. 6:9-ap-715-KSJ (Order Affirming the Order and Memorandum Opinion of the Bankruptcy Court Denying the Bank Test Group's Motion to Dismiss).
[17] Doc. No. 18 Omnibus Case Management and Scheduling Order.
[18] The bank defendants in the following adversary proceedings all oppose the Trustee's jury trial demand: 9-ap-50; 9-ap-51; 9-ap-52; 9-ap-54 (the instant adversary proceeding); 9-ap-67; 9-ap-106; 9-ap-474; 9-ap-534; 9-ap-716; and 9-ap-864.
[19] Doc. No. 22, Bank of America's Motion to Strike Jury Trial Demand.
[20] *Burns v. Lawther*, 53 F.3d 1237, 1240 (11th Cir. 1995).
[21] Fed. R. Civ. P. 38(b)(1).
[22] *Burns v Lawther*, 53 F.3d at 1240 (citations omitted).

Here, the Trustee filed his request for a jury trial on October 5, 2012, well before the deadline to amend pleadings of December 21, 2012.[23] Even though the demand was made long after the complaint was filed on February 27, 2009, the delay was reasonable under the circumstances.

All parties were focused on the Bank Test Case One and Two issues, the appeal to the District Court, and the determination of whether substantive consolidation was merited and would moot the constructive fraud counts. Indeed, this adversary proceeding was formally stayed until after the District Court entered its ruling on September 7, 2012. Until these preliminary issues were resolved and the stay was lifted, this and similar adversary proceedings remained in embryonic form. The Trustee's jury trial demand is deemed timely under Rule 38.

Even if the Trustee's demand were untimely, however, courts have broad discretion to grant a tardy demand for jury trial under Rule 39, which allows a court to "order a jury trial on any issue for which a jury might have been demanded."[24] In the Eleventh Circuit, a court generally should overlook the delay and "grant a jury trial in the absence of strong and compelling reasons to the contrary," considering these factors:

> (1) whether the case involves issues which are best tried to a jury; (2) whether granting the motion would result in a disruption of the court's schedule or that of the adverse party; (3) the degree of prejudice to the adverse party; (4) the length of the delay in having requested a jury trial; and (5) the reason for the movant's tardiness in requesting a jury trial.[25]

The Eleventh Circuit Court of Appeals directs courts to give significant weight in the analysis to a party's reason for making the belated request.[26]

For the same reasons the Court earlier found the Trustee's demand timely, the Court also holds that an extension of time, until December 21, 2012, is merited to request a jury trial. The

---

[23] In every similar situated adversary proceeding against a bank, the Trustee filed a Demand for Jury Trial no later than December 21, 2012.
[24] *Parrott v. Wilson*, 707 F.2d 1262, 1267 (11th Cir. 1983).
[25] *Id.* (citations omitted).
[26] *Id.*

delay, if any, in making the demand for a jury trial is understandable in the context of this complex litigation. Given the imposition of the stay, the extensive litigation on preliminary issues raised by the motions to dismiss, and the "inextricably interwoven state of the Debtors' financial affairs and the costs [and time] associated with unwinding the financial mess,"[27] the Court finds sufficient justification for the Trustee's perhaps belated request for a jury trial.

A modest extension of time does not disrupt the Court's schedule or cause any unwarranted prejudice to any adverse party. The fact that the Trustee made his demand eleven days after the stay lifted indicates that he did not act dilatorily. The bank test procedures imposed an important "breather" allowing the defendants, who now oppose the Trustee's jury trial demand, a chance to watch from the sidelines while the Trustee and the lead bank tirelessly labored to resolve the preliminary issues. Allowing belated jury trial demands under these circumstances would impose no undue prejudice upon the idling defendants, nor would this Court find any of the other factors compelling enough to justify abrogating the Trustee's Seventh Amendment rights.

### **The Trustee is Bound by the Debtor's Contractual Waiver**

Bank of America next argues that the underlying loan documents executed by the parties waived any right to a jury trial and that the Trustee is bound by this waiver.[28] Paragraph 24 of the Third Amendment to the loan agreement, executed by the Debtor on June 15, 2005, states:

> **24. Waiver of Trial by Jury.** Borrower, Guarantor, and Bank hereby knowingly, irrevocably, voluntarily, and intentionally waive any right to a trial by jury in respect of any litigation based on this Third Amendment, the other Loan Documents, or any other documents executed in connection with this Third Amendment or the other Loan Documents, or arising out of, under, or in connection therewith, or any course of conduct, course of dealing, statement (whether oral or written), or action of any party.[29]

---

[27] *In re Pearlman*, 450 B.R. 219, 221 (Bankr. M.D. Fla. 2011).
[28] Doc. No. 22 at 5.
[29] Proof of Claim No. 750-1, Exhibit B at 7.

The Trustee, in response, argues the waiver is not binding on him because he is asserting a fraudulent transfer, not a disagreement arising under the loan agreements.[30] The Trustee also argues that, even if the Debtors did waive their rights to a jury trial, the Trustee is not bound by the waiver because § 544 of the Bankruptcy Code entitles the Trustee to bring fraudulent conveyance actions on behalf of pre-petition *creditors*, not on behalf of the Debtors who executed the agreements.[31]

The Court rejects both of these arguments. Here, the Trustee agrees that the Debtors made payments to the Defendant under the applicable loan agreements. He then asserts that the payments constitute actual fraudulent transfers. The Trustee, who would prefer not to be bound by the jury trial waiver, asks the Court to divorce consideration of the reason why these loan payments were made (in his opinion fraudulently) from the terms of the underlying documents. Because the terms of the underlying loan agreements dictate the terms of the repayment, establish the agreements of the parties, and are enforceable in determining whether the payments were appropriate or avoidable, the Trustee, acting on behalf of the Debtor's estate, is bound by the Debtor's knowing and voluntary waiver of its rights to a jury trial.[32]

The Trustee argues alternatively that he is not bound by the Debtors' jury trial waiver because, in bringing the fraudulent conveyance claim, he was stepping "into the shoes of a pre-petition creditor under § 544(b)."[33] In other words, the Trustee is arguing that because he is bringing the demand for jury trial on behalf of the general unsecured creditors, and not directly asserting a right held by the Debtors prepetition, he is not bound by the waiver.[34]

---

[30] Doc. No. 27 at 4-5.
[31] *Id*. at 5 (citing *In re Grubbs Const. Co.,* 321 B.R. 346, 350 (Bankr. M.D. Fla. 2005) (noting "Under Section 544(b), the trustee succeeds to the rights of an allowed unsecured creditor in existence at the commencement of the case who can avoid the transfer or obligation under applicable state or local law.")).
[32] *Correa v. BAC Home Loans Servicing LP*, 2012 WL 1176701 (M.D. Fla. Apr. 9, 2012) *(citing Bakarc, Inc. v. Villager Franchise Sys., Inc.,* 164 F. App'x 820, 823 (11th Cir.2006) (per curiam)) (holding "A party may validly waive his right to a jury trial if his waiver is done knowingly and voluntarily.").
[33] Doc. No. 27 at 5.
[34] *Id*. (referencing *In re Grubbs Const. Co.,* 321 B.R. at 350).

A trustee represents the interests of a *debtor* reduce to money property of the estate, which includes bringing any action that the *debtor* could have brought had it not filed for bankruptcy.[35] The Trustee is correct that pre-bankruptcy, only a creditor had the right to assert a state-law fraudulent conveyance claim. However, once the Debtors' petitions were filed, any fraudulent conveyance claim became the *exclusive* right of the Trustee to pursue.[36] The Trustee, who has the same rights and defenses as the Debtors, is bound by the Debtors' waiver and is precluded from asserting a jury trial demand in this case.[37]

### The Trustee is not Entitled to a Jury Trial when a Creditor Files a Proof of Claim

The Trustee also is not entitled to a jury trial because the Defendant filed a proof of claim. A party's right to jury trial originates in the Seventh Amendment to the United States Constitution, which entitles any party to a jury trial "in suits at common law, where the value in controversy shall exceed twenty dollars."[38] The Supreme Court has differentiated between *equitable* and *legal* claims, interpreting the phrase "suits at common law" to mean "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered."[39] The thrust of the Seventh Amendment is to preserve the same legal, common-law basis for granting a right to jury trial that existed in 1791.[40]

---

[35] 11 U.S.C. § 704(a)(1). *In re Halabi*, 184 F.3d 1335, 1337 (11th Cir. 1999) (stating "[a]s a general rule, bankruptcy estates enjoy the same rights that the debtor held immediately prior to the filing of bankruptcy.").

[36] *Mennen v. Onkyo Corp.,* 248 F. App'x 112, 113 (11th Cir. 2007). *See also* the Trustee's complaint, Doc. No. 1, asserting the Trustee may recover "property for the benefit of the estate of the Debtors."

[37] *In re Halabi*, 184 F.3d at 1337 (stating "The trustee succeeds only to such rights as the bankrupt possessed; and the trustee is subject to all claims and defenses which might have been asserted against the bankrupt but for the filing of the petition." (citing *In re Kemp,* 52 F.3d 546, 553 (5th Cir.1995)); *In re S. Indust. Mech. Corp.*, 266 B.R. 827, 833 (W.D. Tenn. 2001) (noting that a trustee in bankruptcy, has the same rights and defenses as the debtor, is bound by a debtor's jury trial waiver).

[38] U.S. Const. Amend. VII.

[39] *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41, 109 S. Ct. 2782, 2790, 106 L. Ed. 2d 26 (1989) (citing *Parsons v. Bedford*, 3 Pet. 433, 447, 7 L.Ed. 732 (1830)).

[40] *Id*. at 41–42. (noting this basis also extends to modern statutes that formalized legal causes of action existing in the late 18th Century, and the Seventh Amendment "applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty.").

The Supreme Court's test for determining a party's right to jury trial is straightforward.[41] If the claim is legal in nature and asserts a private right, a litigant's right to jury trial is preserved. But, if the claim involves a public right, the litigant may not have a jury trial. The critical question is whether "Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, has created a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary." [42] Even a purely legal cause of action may lose its Seventh Amendment protection when it encroaches on public rights.[43]

Whether or not a cause of action is considered a "core" bankruptcy proceeding is not dispositive,[44] nor is the mere filing of a bankruptcy petition before a court of equity sufficient to deny one a jury trial.[45] Rather, some type of affirmative action is needed to reassign a private legal right to an equitable public forum and to strip parties of the right to trial by jury.

In *Granfinancieara S.A. v. Nordberg*, the Supreme Court clarified that, at least with respect to a preference or fraudulent conveyance dispute, a creditor's right to jury trial remains intact for these traditionally legal claims, as long as the creditor does not invoke the public rights doctrine by filing a proof of claim against the estate. Once a claim is filed, the creditor is entitled

---

[41] *See Granfinanciera,* 492 U.S. at 41–42. First, a court must find that the cause of action is one that would have been tried before a jury in England in 1791. Next, a court must "examine the remedy sought and determine whether it is legal or equitable in nature.

[42] *Id*. at 54 (citing *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S., at 586)).

[43] *Id*. at 53 (stating "In certain situations, of course, Congress may fashion causes of action that are closely *analogous* to common-law claims and place them beyond the ambit of the Seventh Amendment by assigning their resolution to a forum in which jury trials are unavailable.").

[44] 28 U.S.C. § 157(b)(2) sets forth a list of core bankruptcy proceedings. *See Germain v. Connecticut Nat. Bank*, 988 F.2d 1323 (2d Cir. 1993) (Indeed, "[n]either Congress or the courts may deprive litigants of their constitutional rights simply by labeling a cause of action 'core.'").

[45] *Granfinanciera*, 942 U.S. at 57-59 (noting even though bankruptcy courts are "essentially courts of equity because they characteristically proceed in summary fashion to deal with the assets of the bankrupt," Congress lacks the constitutional authority to automatically strip parties of their Seventh Amendment rights simply by reassigning them to an equitable forum; *In re Enron*, 319 B.R. at 125 (noting "the filing of the bankruptcy case by Enron Corp. and its subsidiary Enron North America does not automatically result in the waiver of a jury trial right held by Enron."); *In re Jensen*, 946 F.2d 369, 373-74 (5th Cir. 1991) (stating "The petition for bankruptcy has nothing to do with whether the bankruptcy court can exercise equitable jurisdiction over a debtor's pre-petition claims. Its only effect is to pass ownership and control of the claims to the estate and its representative.").

to a resolution in equity only. The cause of action becomes part of the larger bankruptcy scheme because the proof of claim triggered the claim allowance and disallowance process.[46]

The Supreme Court has yet to explore whether, as here, a *trustee* is entitled to a jury trial on an avoidance action even though it was a *creditor* who triggered the public rights doctrine by filing a claim against the estate. Courts have different opinions on the matter.[47] The Trustee argues a defendant's proof of claim should not waive his fundamental right to jury trial on a fraudulent transfer claim.[48] The Court disagrees and accepts the reasoning of cases finding a trustee's jury trial rights are abrogated when a creditor files a proof of claim because the claim transforms the entire dispute into a public rights issue.

A creditor does not file a claim against a bankruptcy estate in a vacuum. All other interested parties to the bankruptcy are impacted by the claim because their pro rata distributions are directly affected.[49] If the trustee successfully avoids a fraudulent transfer, the amount every other creditor will receive correspondingly increases. A creditor's claim, therefore, "become[s] integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction."[50] This "conversion theory," as the name suggests, is the notion that filing a claim converts the *entire* nature of the claim from one that would have existed in common-law in

---

[46] *Granfinanciera*, 492 U.S. at 58.
[47] *U.S. Bank Nat. Ass'n v. Verizon Communications Inc.,* 2012 WL 987539 at *3 (N.D. Tex. Mar. 21, 2012) (noting "Under these circumstances, the right to a jury trial is extinguished for both the debtor and the creditor that files the proof of claim."); *In re Jensen*, 946 F.2d at 374 (concluding the same); *In re Crown Vantage,* 2007 WL 172321, at *3 (N.D. Cal. Jan 18, 2007) (concluding the same); *In re Washington Manufacturing Company,* 133 B.R. 113, 117 (M.D. Tenn. 1991) (concluding the same); *In re B & E Sales Company, Inc.,* 129 B.R. 133, 134, 136–37 (Bankr. E.D. Mich. 1990) (concluding the same). *Haile Co. v. R.J. Reynolds Tobacco Co. (In re Haile Co.),* 132 B.R. 979, 980–81 (Bankr. S.D. Ga. 1991) (concluding that the waiver principle applicable to creditor who files claim "logically extends to a debtor who, in addition to petitioning the court for protection under title 11, voluntarily brings an adversary proceeding seeking affirmative relief from the court") (citation omitted). *But see Picard v. Katz*, 825 F. Supp. 2d 484 (S.D. N.Y. 2011) (finding a trustee maintains its Seventh Amendment rights even where a defendant submitted a claim in a corresponding bankruptcy case).
[48] Doc. No. 27 at 2 & 10 (stating "the Trustee should not be stripped of his fundamental right to a jury trial merely where, as where, the defendants have filed a proof of claim."
[49] *In re Jensen,* 946 F.2d at 374–75.
[50] *Langenkamp v. Culp*, 498 U.S. 42, 45, 111 S. Ct. 330, 331, 112 L. Ed. 2d 343 (1990) (citing *Granfinanciera,* 492 U.S. at 57-58).

1791, to one sought under a regulatory scheme involving "public rights."[51] This metamorphosis extinguishes Seventh Amendment rights for the creditor and the trustee alike.[52] As the court noted in *In re Enron,* "when a creditor elects to participate in that equitable [bankruptcy] process by filing a proof of claim, . . . [the filing] denies both the creditor and the trustee any right to a jury trial either would have had concerning the claims."[53]

Section § 502(d), which imposes upon the court an absolute obligation to disallow avoidable "claims," further supports the Court's conclusion that the Trustee is not entitled to a jury trial. Under § 502(d), a court *shall* disallow any claim of an entity for which property is recoverable under §§ 542, 543, 550, or 553, or avoidable under §§ 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a). Each of these enumerated avoidance mechanisms vests in a trustee the power to affect and rearrange claims asserted against a bankruptcy estate. Even if the Trustee had not specifically requested relief under § 502(d), as he has in each bank adversary currently before the Court, he has lost his right to rely on a legal resolution in this case because the Defendant's proof of claim and his interrelated avoidance action now mandate resolution in an equitable forum, not by a jury.

The Trustee rejects the conversion theory and cites this Court's ruling in *In re Seminole Walls & Ceilings Corp*[54] to suggest that even though a creditor loses its right to jury trial by filing a proof of claim, the Court should hear a trustee's legal fraudulent conveyance claim in a trial by jury first, *before* it disturbs any claims under § 502(d).[55] As this Court stated in *Seminole*

---

[51] *Granfinanciera,* 492 U.S. at 51 (holding "Congress may only deny trials by jury in actions at law, we said, in cases where "public rights" are litigated."). *U.S. Bank Nat. Ass'n v. Verizon Communications Inc.,* 2012 WL 987539 at *3 (N.D. Tex. Mar. 21, 2012) (noting "Under these circumstances, the right to a jury trial is extinguished for both the debtor and the creditor that files the proof of claim."); *In re Crown Vantage,* 2007 WL 172321, at *3 (N.D. Cal. Jan 18, 2007) (same); *In re Washington Manufacturing Company,* 133 B.R. 113, 117 (M.D. Tenn. 1991) (same); *In re B & E Sales Company, Inc.,* 129 B.R. 133, 134, 136–37 (Bankr. E.D. Mich. 1990) (same).

[52] *In re Jensen*, 946 F.2d at 374 (stating that filing a proof of claim denies a creditor and a debtor or trustee any right to jury trial that they otherwise might have).

[53] *In re Enron*, 319 B.R. at 125 (citing *In re Jensen*, 946 F.2d at 374).

[54] *In re Seminole Walls,* 336 B.R. 539 (Bankr. M.D. Fla. 2006).

[55] Doc. No. 27 at 13 (citing *In re Seminole Walls*, 336 B.R. 539 "[w]hen an action involves a combination of both legal and equitable claims, the right to jury trial on the legal claim, including all issues common to both claims, remains intact.").

*Walls*, the joinder of one legal claim with three equitable claims "does not justify a denial of the Trustee's right to a jury trial."[56]

The Court finds this assertion misses the mark however as it relates to the matter at hand. The Court's holding today is not dependent on a trustee asserting a combination of legal and equitable claims that could be tried separately. Instead it relies, as did the *Seminole Walls* decision, upon the interrelated nature of the claims and the trustee's avoidance actions.[57] The proximate reordering of creditors' claims in this context "cannot be accomplished without resolution of what would otherwise be a legal dispute, therefore the dispute becomes an essential element of the broader equitable controversy" and no jury trial may be had for either party.[58]

### The Trustee is Never Entitled to a Jury Trial in Avoidance Actions

Lastly, the Court agrees with the Defendant that the Trustee is never entitled to a jury trial in an avoidance action.[59] Although the right to jury trial is held inviolate in many circumstances,[60] a trustee loses this right by invoking the avoidance process "because it directly addresses the property of the bankruptcy estate, the eventual amount of claims against the estate, and the distribution of the property of the bankruptcy estate, all of which involve the equitable bankruptcy process."[61]

Whether or not a creditor actually files a proof of claim is irrelevant. It is well established that a creditor need not file an actual claim to share in the estate's distributions.[62] Debtors routinely schedule debts. Creditors routinely rely on scheduled liabilities rather than file

---

[56] *In re Seminole Walls*, 336 B.R. at 546.
[57] *Id.* at 546 (albeit couching the decision in waiver, the Court held that because the creditors had filed proof of claims, they were not entitled to a jury trial in the trustee's avoidance claims).
[58] *Germain v. Connecticut Nat. Bank*, 988 F.2d at 1329. See also *Katchen v. Landry*, 382 U.S. at 336 (stating "the Bankruptcy Act . . . converts the creditor's legal claim into an equitable claim to a pro rata share of the res, a share which can neither be determined nor allowed until the creditor disgorges the alleged voidable preference he has already received." (citations omitted).
[59] *See In re Enron*, 319 B.R at 127.
[60] *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509, 79 S. Ct. 948, 956, 3 L. Ed. 2d 988 (1959).
[61] *In re Enron*, 319 B.R. at 127.
[62] *In re Simmons*, 765 F.2d 547, 551 (5th Cir. 1985) (noting that although a proof of claim constitutes prima facie evidence of the validity of a creditor's claim against an estate, and may be necessary in some circumstances, such as when a claim appears incorrectly in a debtor's schedules, a claim need not be filed).

actual proofs of claim. The mechanical activation of § 502(d) to allow or disallow a claim is not contingent on a proof of claim. Indeed, § 502(h) *automatically* bestows a claim upon a defendant who satisfies a trustee's avoidance judgment.[63] Therefore, even where no proof of claim was filed, the Trustee's avoidance action constructs one and triggers the same equitable claims allowance and disallowance process[64] that unavoidably affects the priority of claims and readjusts the debtor–creditor relationship.[65] As the court in *In re Enron Corp.* stated, "[b]y commencing an avoidance proceeding, the debtor thereby effectively invokes the process of determining and distributing the property of the bankruptcy estate to creditors holding allowed claims. That triggers the essence of the bankruptcy equitable process" which necessarily abrogates Seventh Amendment rights.[66]

The Trustee asks the Court to discount *Enron* and rely on *Picard v. Katz* and *Germain v. Conn. Nat'l Bank,* both of which granted a bankruptcy trustee a jury trial because the causes of action could be severed from the larger bankruptcy process.[67] In *Picard*, a trustee in the familiar situation of avoiding transfers made in furtherance of a Ponzi scheme sought a jury trial on his fraudulent transfer claims. The court held that the trustee was entitled to a jury trial, notwithstanding the fact that the defendant creditors filed proofs of claim, because a successful

---

[63] 11 U.S.C. § 502(h) states: "A claim arising from the recovery of property under . . . § 550 . . . shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.").
[64] *In re Enron Creditors Recovery Corp.,* 376 B.R. 442, 465 (Bankr. S.D.N.Y. 2007) ("When a preferential payment is avoided, 'the obligation for which the payment was made is revived and may be asserted against the debtor's estate because the creditor has lost the value of the payment received.'") (citing *In re Gurley,* 311 B.R. 910, 918 (Bankr. M.D. Fla. 2001)).
[65] *Mirant Corp. v. The S. Co.,* 337 B.R. at 121. *U.S. Bank Nat. Ass'n v. Verizon Commc'ns Inc.*, 2012 WL 987539 at *3 (N.D. Tex. Mar. 21, 2012) (citing *Langenkamp,* 498 U.S. at 44, and *Germain v. Connecticut National Bank,* 988 F.2d 1323 (2nd Cir.1993)).
[66] *In re Enron Corp.,* 319 B.R. at 126.
[67] Doc. No. 27 at 5-6 (citing *Picard v. Katz*, 825 F. Supp. 2d 484 (S.D.N.Y 2011) and *Germain v. Conn. Nat'l Bank*, 988 F.2d 1323 (2d Cir. 1993)).

motion to withdraw the reference "substantially severed" the trustee's fraudulent transfer action from "both the claims allowance process and the hierarchical reordering of creditors' claims."[68]

The Court does not agree with the reasoning in that case. The district court's referral of bankruptcy related matters to bankruptcy courts in no way affects the claims allowance process or the hierarchical reordering of claims. The district courts serve as the original courts of equity for all bankruptcy related proceedings.[69] Trying a fraudulent conveyance claim in the district court, which has all the equitable powers assigned to a bankruptcy court, no more disrupts the equitable distribution process or severs legal claims from equity than if the district court chose to resolve the bankruptcy matter in its entirety, which it is entitled to do.

Nor does the Court find *Germain* instructive. The court in *Germain* upheld a trustee's jury trial rights because he was suing under contract and tort claims, which are not equitable issues.[70] Unlike the Trustee's fraudulent conveyance action in this case, the trustee's claims in *Germain* only *incidentally* implicated the bankruptcy process, nothing changed their essential legal character, and they in no way affected the claims allowance process.[71] The court even noted that a "different result might adhere if the action had become part of the claims-allowance process, because determining pro rata distribution is characteristically equitable."[72]

The Court is not persuaded by these two cases and denies the Trsutee's right to jury trial on his fraudulent conveyance actions. Where the Defendant creditor outside of bankruptcy once held a perfectly legal claim to recover property improperly transferred from the Debtors, the Trustee now controls much more. His power to allow and disallow claims and rearrange

---

[68] *Picard v. Katz*, 825 F. Supp. 2d at 487 (holding the "adjudication of the Trustee's fraudulent transfer claims occur[ed] . . . apart from the larger regulatory scheme Congress has enacted for 'allowance and disallowance' of claims.").
[69] 28 U.S.C. § 1334(b).
[70] *Germain v. Connecticut Nat. Bank*, 988 F.2d at 1323.
[71] *Id.* at 1329.
[72] *Id.* (citing *Katchen*, 382 U.S. at 366 "An action that bears directly on the allowance of a claim is integrally related to the equitable reordering of debtor-creditor and creditor-creditor relations. If an equitable reordering cannot be accomplished without resolution of what would otherwise be a legal dispute, then that dispute becomes an essential element of the broader equitable controversy.").

priorities under the Title 11 umbrella changes the essential character of the dispute and consequently comes with a hefty price—he loses his right to seek a jury trial in avoidance actions.[73]

### Conclusion

Although the Trustee timely demanded a jury trial in this adversary proceeding, the Defendant's Motion to Strike[74] is granted. The Trustee is bound by the Defendant's contractual waiver. In addition, under the theory that the legal fraudulent transfer claim was "converted" to a public right requiring resolution by an equitable forum, the Trustee is not entitled to a jury trial because of the Defendant's proof of claim and, more importantly, his inherent role in adjusting the debtor-creditor relationship between all parties involved in this Chapter 11 case. A separate order consistent with this memorandum opinion shall be entered.

DONE AND ORDERED in Orlando, Florida, on July 16, 2013.

KAREN S. JENNEMANN
Chief United States Bankruptcy Judge

---

[73] *Control Ctr., L.L.C. v. Lauer*, 288 B.R. 269, 282 (M.D. Fla. 2002) (noting an avoidance action confers upon a trustee *additional* remedies that "trigger the non-jury, public rights 'process of allowing and disallowing claims in bankruptcy court.'").

[74] Doc. No. 22.